United States District Court
Southern District of Texas
**ENTERED**
April 22, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TAAJWAR ALI, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:18-CV-25 |
| § | |
| RODNEY SNEED, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are a motion for summary judgment filed by Defendant Harris County (Dkt. 68) and Harris County's portion of a supplemental motion for summary judgment filed by both defendants (Dkt. 95). The Court has considered the parties' briefing, the summary judgment record, and the applicable law and **GRANTS** Harris County's motion for summary judgment. The Court **DENIES** Harris County's portion of the defendants' joint supplemental motion for summary judgment as moot.

## BACKGROUND

This is a Fourth Amendment excessive force case[1] arising out of a brief altercation between the plaintiff, Taajwar Ali ("Ali"), and the individual defendant, a Harris County deputy named Rodney Sneed ("Sneed"). Ali and Sneed were cordial work acquaintances at Harris County Department of Education Academic Behavioral School—West, where Ali was an educational aide and Sneed was a contract sheriff's deputy; and the Court has

---

[1] At the hearing on the defendants' motions for summary judgment, the plaintiff voluntarily dismissed his claims under the Texas Constitution. *See* audio recording of hearing held on February 25, 2020 at 3:14–3:15. Only claims under the Fourth Amendment to the United States Constitution remain.

set out the details of the confrontation between the two in a separate opinion denying Sneed's motion for summary judgment. Essentially, Ali asked Sneed to walk over to where Ali was standing and unlock the school custodian's office so that Ali could use the computer in that office. When Sneed asked Ali to walk over to Sneed to get the key, Ali made what Sneed perceived as an insensitive comment about Sneed's weight and need to walk more for exercise. Sneed refused to give Ali the key. Ali was able to gain access to the office without Sneed's help, but a few minutes later Sneed walked into the office, where the two had more words and then, according to Ali, Sneed walked behind the seated Ali and punched Ali in the back of the head.

In addition to suing Sneed, Ali has sued Harris County under 42 U.S.C. § 1983 for "creat[ing] . . . an expectation of impunity for the use of excessive deadly force" among its deputies by failing to properly supervise them (Dkt. 43 at p. 9–10). Harris County has moved for summary judgment.

## SUMMARY JUDGMENTS AND SECTION 1983 MUNICIPAL LIABILITY

### A. Rule 56

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id*. at 322–23.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts generally must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citation and quotation

marks omitted). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which show the existence of a genuine issue concerning every essential component of its case. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### B. Municipal liability under Section 1983

Municipalities can be sued under 42 U.S.C. § 1983, *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978), but they cannot be held vicariously liable for the Constitutional torts of their employees or agents. *Gros v. City of Grand Prairie*, 181 F.3d 613, 615 (5th Cir. 1999). Municipalities are only liable for acts directly attributable to them through some official action or imprimatur. *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). To establish municipal liability under Section 1983, a plaintiff "must identify: (1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom." *Id.* at 541–42 (quotation marks omitted). An "official policy" will generally take the form of a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the local government's officers.

*Zarnow v. City of Wichita Falls*, 614 F.3d 161, 166 (5th Cir. 2010). A "custom" is generally defined as a persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to fairly represent municipal policy. *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000).

Municipalities are not normally liable under Section 1983 for inadequate training of employees; but the failure to properly train or supervise employees can constitute an actionable "policy" when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389–90 (1989). Specifically, to succeed on a claim for municipal liability for failure to train or supervise, a plaintiff must demonstrate: (1) that the municipality's training and supervisory policies and practices were inadequate; (2) that the municipality was deliberately indifferent in adopting its training and supervisory policies and practices; and (3) that the inadequate training and supervisory policies and practices directly caused the violation of the plaintiff's Constitutional rights. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); *see also Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273, 286 (5th Cir. 2002). "Deliberate indifference is more than mere negligence" and goes beyond even gross negligence. *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000); *see also Whitley v. Hanna*, 726 F.3d 631, 641 (5th Cir. 2013) ("While we previously have observed that the terms 'gross negligence' and

'deliberate indifference' are sometimes used interchangeably, understood properly, the former is a heightened degree of negligence, while the latter is a lesser form of intent.") (quotation marks omitted). Given that high standard, "[p]roof of a single instance, rather than a pattern of similar violations, normally will not sustain a plaintiff's claim that such a lack of training or supervision caused a violation of her constitutional rights." *Cozzo*, 279 F.3d at 286–87. "A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (brackets and quotation marks omitted); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 294 (5th Cir. 2005) (rejecting a proffered pattern where it required "an excessively high level of generality"). To be clear, a plaintiff can use a single incident to establish liability for failure to train or supervise if the plaintiff can show "the possibility of recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different training." *Cozzo*, 279 F.3d at 288 (ellipse omitted). But this "single incident exception," by all indications, has very limited reach— the Fifth Circuit "has often rejected application of the single incident exception" and has observed that a plaintiff's failure to identify more than one instance of harm arising from a failure to train or supervise suggests that the alleged inadequacies in training or supervision were in fact neither obvious nor obviously likely to result in a constitutional violation. *Id.*; *see also Conner*, 209 F.3d at 797.

## ANALYSIS

Ali has not presented sufficient evidence to defeat Harris County's motion for summary judgment. To begin with, Ali has not presented any evidence showing that the confrontation between Ali and Sneed was part of a pattern of similar confrontations between Harris County deputies and civilians, let alone between Harris County deputies assigned to work in schools and the civilian employees of those schools. Ali must, therefore, utilize the single-incident exception and show "the possibility of recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different training." *Cozzo*, 279 F.3d at 288 (ellipse omitted).

Ali has not made the required showing. To the contrary, by all indications this is one of the cases in which the apparent rarity of the complained-of incident suggests that the alleged inadequacies in training or supervision were neither obvious nor obviously likely to result in a constitutional violation. *Id.*; *see also Conner*, 209 F.3d at 797. There is no evidence in the record showing that Harris County was deliberately indifferent to an obvious need to train Sneed more extensively or to supervise Sneed more stringently. *Cf. Brown*, 219 F.3d at 463 ("[G]iven the evidence that provided notice to Sheriff Moore of the highly predictable consequences of not training Burns—i.e., his youth, his personal record of recklessness and questionable judgment, his inexperience, and his exuberance as a reserve deputy in the short time he had been on the force, and knowledge that forcible arrests were inevitable for a law enforcement officer—Sheriff Moore's considered policy decision not to require training for Burns can be said to constitute 'deliberate indifference' to the Fourth Amendment rights of those citizens Burns would

encounter."). In fact, Ali's own summary judgment evidence shows that, even after the incident with Ali, the school's Director of Administration told Sneed's supervisor that:

> he did not wish to have Deputy Sneed removed from this contract. [The Director] stated Deputy Sneed does an excellent job, works well with the children and staff, often having the patience and professionalism needed for this high stress assignment.
> Dkt. 79-6 at p. 2.

In other words, there is no evidence showing that Harris County was deliberately indifferent to signs that Sneed was abusing, or might abuse, his power as a police officer at the school. Instead, the record indicates that the issue underlying the confrontation between Ali and Sneed was not abuse of police power so much as a brief flare-up of tempers between two generally friendly coworkers sparked by an insensitive comment made by one coworker to the other about weight and exercise. And Harris County addressed that problem: after the incident with Ali, Sneed's supervisor promptly counseled Sneed on the need to ensure that Sneed's friendliness with Ali and other school staff did not compromise Sneed's ability to maintain a proper professional distance. In a report on the incident, Sneed's supervisor wrote that Sneed:

> often "jokes around" with Mr. Ali and does not take what he says seriously. Deputy Sneed stated he and Mr. Ali met with [the school's Director of Administration] after the incident. Both apologized to each other and Deputy Sneed believed the incident to be over. This was why he did not feel he needed to report it immediately.
>
> . . .
>
> I advised Deputy Sneed I believed his personal involvement and "joking" with Mr. Ali influenced his decision to not treat this as a criminal matter. He should conduct himself in a business-like manner when interacting with school staff.

> . . .
>
> Deputy Sneed was counseled for failing to report the use of force immediately, although he did report it before the start of his next duty day. In addition he was counseled on keeping his objectivity with the school staff he works with. He was reminded he is expected to act as a Harris County Sheriff's Deputy at all times and to maintain his bearing and professionalism.
>
> Dkt. 79-6 at p. 2.

There is, in short, no evidence of the requisite deliberate indifference on the part of Harris County to the Fourth Amendment rights of school employees or other citizens that Sneed would encounter. Harris County's motion for summary judgment is granted.

## CONCLUSION

Harris County's motion for summary judgment (Dkt. 68) is **GRANTED**. The Court **DENIES** Harris County's portion of the defendants' joint supplemental motion for summary judgment (Dkt. 95) as moot.

SIGNED this day 22nd day of April, 2020.

_____
George C. Hanks Jr.
United States District Judge